## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MIKE GHIAS      :
716 Harrington Road      :
Rockville, Maryland 20852      :
     :
and      :      Civil Case No. _____
     :
ASHGAR GHIAS      :
5706 Wicomico Avenue      :
Rockville, Maryland 20852      :
     :
     Plaintiffs      :
     :
     v.      :
     :
SIRNAOMICS, INC.      :
401 Professional Drive, Suite 280      :
Gaithersburg, Maryland 20879      :
     :
Serve: Joan Wang (Resident Agent)      :
     17093 Briardale Road, Suite 101      :
     Rockville, Maryland 20855      :
     :
and      :
     :
SIRNAOMICS LTD.      :
401 Professional Drive, Suite 280      :
Gaithersburg, Maryland 20879      :
     :
Serve: Samuel B. Sterrett, Jr.      :
     Rimon Law      :
     1990 K Street NW, Suite 420      :
     Washington, DC 20006      :
     :
     Defendants      :

## COMPLAINT

Plaintiffs, Mike Ghias ("Mike") and Ashgar Ghias ("Ashgar"), by and through their attorneys, Jeffrey M. Schwaber, Deanna L. Peters and Stein Sperling Bennett De Jong Driscoll PC, hereby sue and demand judgment against Sirnaomics, Inc. and Sirnaomics Ltd. (together, "Sirnaomics"), stating as follows:

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

## PARTIES

1.      Mike is, and has been at all times relevant hereto, an individual who is domiciled in Montgomery County, Maryland.

2.      Ashgar is, and has been at all times relevant hereto, an individual who is domiciled in Montgomery County, Maryland.

3.      Sirnaomics, Inc. is a Delaware corporation that maintains its principal office in Montgomery County, Maryland, in which county Sirnaomics also carries on its regular business. Sirnaomics, Inc. was formed on or about June 5, 2007.  It maintains a Resident Agent in the State of Maryland.

4.      Sirnaomics Ltd. is a foreign company organized and existing under the laws of the Cayman Islands.  Sirnaomics Ltd. maintains a principal office in and at the same principal office of Sirnaomics, Inc., in Montgomery County, Maryland.  Sirnaomics Ltd., together with Sirnaomics, Inc., also carries on its regular business in Montgomery County, Maryland.

5.      Sirnaomics, Inc. and Sirnaomics Ltd., as well as their subsidiaries and/or other affiliated or related entities, together maintain their "Global Headquarter[s]" in Gaithersburg, Maryland, which is situated in Montgomery County.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper pursuant to Md. Code Ann., CTS. & JUD. PROC., § 6-102 and § 6-103.

7.      Venue is proper pursuant to Md. Code Ann., CTS. & JUD. PROC., § 6-201(a).

## FACTS

8.      Sirnaomics holds itself out as "the first and only clinical-stage RNA therapeutics biopharmaceutical company with a strong presence in both China and the U.S. that is discovering

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

and developing innovative drugs for indications with significant unmet medical needs and large market opportunities." Sirnaomics enjoys a global presence, maintaining Clinical Centers in California and China, and its Global Headquarters in Gaithersburg, Maryland.

9.      In 2020, Mike and Ashgar were significant shareholders in Sirnaomics, Inc., holding 1,250,000 shares and 398,000 shares, respectively.

10.     Beginning in at least September 2020, Sirnaomics, Inc. began to explore the possibility of raising equity financing for its biopharmaceutical work through an initial public offering ("IPO"). The IPO was anticipated to occur in either Hong Kong or the United States in the year 2021.

11.     In connection therewith, Sirnaomics, Inc. represented to its shareholders, including Mike and Ashgar, that a corporate restructuring (the "Restructuring") was necessary to pursue the IPO. Specifically, among other things, Sirnaomics, Inc. represented to its shareholders, including Mike and Ashgar, that a new and separate entity would need to be formed as a holding company for the sole purpose of receiving and holding all shares in Sirnaomics, Inc., so that those shares, along with newly issued shares, could be registered and publicly traded.

12.     To that end and for that purpose, in or about October 2020, Sirnaomics Ltd. was formed in the Cayman Islands.

13.     In order to accomplish the Restructuring as planned and formally to pursue the IPO, Sirnaomics needed the unanimous consent of Sirnaomics, Inc.'s shareholders. Sirnaomics set about to gain this consent by making certain representations to Sirnaomics, Inc. shareholders, including Mike and Ashgar (the "Representations"). These Representations included, among other things, that (i) Sirnaomics would exchange each shareholder's shares in Sirnaomics, Inc.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

for shares in Sirnaomics Ltd.; and (ii) the replacement shares in Sirnaomics Ltd. would be substantially the same, and carry substantially the same rights, as the original shares in Sirnaomics, Inc.

14.     Sirnaomics memorialized its Representations in, among other writings, a Written Consent of Stockholders and Board of Directors, dated January 1, 2021.

15.     Based upon the above-described Representations, among others, Mike and Ashgar, along with other shareholders of Sirnaomics, Inc., provided their consent to the Restructuring and the IPO.

16.     Mike and Ashgar, among other shareholders of Sirnaomics, Inc., ultimately executed a Share Exchange Agreement, made as of January 1, 2021, by and among Sirnaomics, Inc., Sirnaomics Ltd., and the Shareholders of Sirnaomics, Inc.   In the Share Exchange Agreement, Mike and Ashgar memorialized their "desire to exchange their securities in Sirnaomics[, Inc.] for similar securities in Sirnaomics [Ltd.]." The parties therefore agreed in the Share Exchange Agreement, among other things, as follows:

a.  "Stockholders will assign, contribute, convey and transfer to Sirnaomics [Ltd.], and Sirnaomics [Ltd.] will accept and acquire from Stockholders, … the securities of Sirnaomics[, Inc.]"; and in exchange, "Sirnaomics [Ltd.] will issue to Stockholders, and the Stockholders will accept and acquire from Sirnaomics [Ltd.], the securities of Sirnaomics [Ltd.] … ." Share Exchange Agreement at § 1.1.

b.  "At or before the Closing Date, each Stockholder shall execute and deliver to Sirnaomics [Ltd.] … certificates [ ] evidencing such Stockholder's securities in Sirnaomics[, Inc.]" Share Exchange Agreement at § 1.2.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

4

c. "As soon as possible after the Closing Date, Sirnaomics [Ltd.] shall deliver to each Stockholder evidence of the securities of Sirnaomics [Ltd.] ... ."  Share Exchange Agreement at § 1.2.

d. The securities "to be transferred by and to Stockholders pursuant to the Exchange and for the consideration set forth in this Agreement, will be validly issued, fully paid, and nonassessable, and *will be transferred by or to Stockholders, free and clear of (other than applicable securities laws) of [sic] any limitations, restrictions, taxes, charges, encumbrances, liens, pledges, security interests, options, warrants, purchase rights, contracts, commitments, equities, claims, and demands of any kind, nature, or description."*  Share Exchange Agreement at § 3.(b) (emphasis added).

17.     The parties also agreed in the Share Exchange Agreement that a certain Sirnaomics Ltd. Members' Agreement would be executed among them.

18.     By December 30, 2021, the IPO was completed, and Sirnaomics Ltd. was officially listed.  On that date, it commenced trading on the Main Board of The Stock Exchange of Hong Kong Limited.

19.     Pursuant to the Share Exchange Agreement, and in express reliance thereon as well as on the representations of the individual principals associated with Sirnaomics, each of Mike and Ashgar facilitated the IPO by performing their obligations under the Share Exchange Agreement at or before the Closing Date as identified by Sirnaomics.  Specifically, each of Mike and Ashgar executed a Stock Power on the form supplied by Sirnaomics, wherein each of Mike and Ashgar "assign[ed], contribute[d], convey[ed], and transfer[red]" their respective shares in Sirnaomics, Inc., and "irrevocably constitute[d] and appoint[ed] Sirnaomics, Inc. attorney to

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

5

transfer the said shares or securities on the books of Sirnaomics, Inc. maintained for that purpose, with full power of substitution in the premises."

20.    Also pursuant to the Share Exchange Agreement, each of Mike and Ashgar executed the Members' Agreement, as well as a subsequent First Amended and Restated Members' Agreement.

21.    Each of Mike and Ashgar therefore timely and fully performed their obligations pursuant to the Share Exchange Agreement.

22.    Sirnaomics, however, did not.  Instead, in or about June of 2022, having induced Mike and Ashgar to both provide their consent and surrender their Sirnaomics, Inc. shares, and as a result having now achieved the IPO for which Sirnaomics needed their shares, Sirnaomics asserted unlawful dominion and control over Mike's and Ashgar's shares.  Specifically, among other things, Sirnaomics purported to issue stock certificates in Sirnaomics Ltd. to each of Mike and Ashgar containing the following restrictive legend (the "Unauthorized Restrictions"):

> **THE SALE, PLEDGE, HYPOTHECATION, OR TRANSFER OF THE SECURITIES REPRESENTED HEREBY IS SUBJECT TO THE APPROVAL OF THE COMPANY.  THESE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER APPLICABLE SECURITIES LAWS.  IN ADDITION, THEY MAY NOT BE SOLD, PLEDGED, OR TRANSFERRED IN ABSENCE OF REGISTRATION UNDER SUCH LAWS OR A VALID EXEMPTION FROM THE REGISTRATION, PROSPECTUS, AND OTHER REQUIREMENTS OF SUCH LAWS.**

(Capitalization and emphasis in original.)

23.    No similar restriction applied to either of Mike's or Ashgar's shares in Sirnaomics, Inc.  Neither Mike nor Ashgar otherwise agreed to the Unauthorized Restrictions.[1]

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[1] The Members' Agreement, as well as the First Amended and Restated Members' Agreement, included a limited "Lock-Up Agreement", pursuant to which Mike and Ashgar, as well as the other Sirnaomics shareholders, agreed in connection with the IPO that they would not transfer their shares for the time period (i) beginning 28 days before the first submission of a listing

Furthermore, upon information and belief, this restriction was not universally placed on other shareholders' shares in Sirnaomics Ltd.

24.　Mike and Ashgar have made demand that Sirnaomics remove the Unauthorized Restrictions from their Sirnaomics Ltd. shares.

25.　Sirnaomics, however, has failed and refused, and continues to fail and refuse, to issue Mike or Ashgar replacement shares in Sirnaomics Ltd. without the Unauthorized Restrictions.

26.　Moreover, Sirnaomics has purported to place further Unauthorized Restrictions on each of Mike's and Ashgar's shares: despite the consummation of the IPO, Sirnaomics unilaterally has declared that each of Mike's and Ashgar's shares "will be unable to be traded publicly on the Hong Kong Exchange."

27.　Upon information and belief, Sirnaomics has not placed any Unauthorized Restrictions on any other shares in Sirnaomics, Inc./Sirnaomics Ltd.

28.　Upon information and belief, after the IPO, and during the time that Sirnaomics has refused to issue proper certificates to Mike and Ashgar and otherwise has placed Unauthorized Restrictions on their shares, the value of Sirnaomics stock has plummeted, resulting in hundreds of thousands of dollars in damage to Mike and Ashgar, who wrongfully have been prevented from freely disposing of their shares.

### COUNT I
### (Breach of Contract)

29.　Mike and Ashgar adopt and incorporate herein by reference the allegations of paragraphs 1 through 28 above as if fully set forth herein.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852
TELEPHONE 301-340-2020

application to The Stock Exchange of Hong Kong Limited, and (ii) ending not later than 180 days after the date of consummation of the IPO. Under the express terms of the Members' Agreement, however, that limited transfer restriction expired not later than December 30, 2021, the date on which the IPO was consummated.

7

30.     The parties agreed to certain obligations within the Share Exchange Agreement. Each of Mike and Ashgar, on their part, agreed to (i) "assign, contribute, convey and transfer to Sirnaomics [Ltd.] … [their] securities of Sirnaomics[, Inc.]" and (ii) "execute and deliver to Sirnaomics [Ltd.] … certificates [ ] evidencing such Stockholder's securities in Sirnaomics[, Inc.]". Sirnaomics, on their part, agreed (i) to "issue to [Mike and Ashgar] … the securities of Sirnaomics [Ltd.] …" and (ii) to "deliver to [Mike and Ashgar] evidence of the securities of Sirnaomics [Ltd.] … ."

31.     Sirnaomics further agreed that Mike's and Ashgar's shares "will be validly issued, fully paid, and nonassessable, and will be transferred by or to Stockholders, free and clear of (other than applicable securities laws) of [sic] any limitations, restrictions, taxes, charges, encumbrances, liens, pledges, security interests, options, warrants, purchase rights, contracts, commitments, equities, claims, and demands of any kind, nature, or description."

32.     Each of Mike and Ashgar timely and fully has performed, and/or is ready willing and able to perform, under the Share Exchange Agreement.

33.     Despite its agreement, however, Sirnaomics has failed and refused, and continues to fail and refuse, to perform its obligations under the Share Exchange Agreement.  Among other things, Sirnaomics has failed and refused, and continues to fail and refuse, to issue to either of Mike or Ashgar shares in Sirnaomics Ltd. that are substantially the same as their shares in Sirnaomics, Inc.   Moreover, Sirnaomics unilaterally has purported to place Unauthorized Restrictions upon Mike's and Ashgar's shares.  Sirnaomics therefore materially has breached the Share Exchange Agreement.

34.     Sirnaomics' material breaches of the Share Exchange Agreement proximately have caused each of Mike and Ashgar to suffer substantial harm and damages.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

35.    The Share Exchange Agreement states in pertinent part, "Each party hereto acknowledges and agrees that any breach of this Agreement would result in substantial and irreparable damage and harm to the other parties hereto for which monetary damages alone could not compensate adequately."

WHEREFORE, each of Mike and Ashgar respectfully requests judgment in his favor and against Sirnaomics, Inc. and Sirnaomics Ltd., jointly and severally, for (i) specific performance of the Share Exchange Agreement; (ii) compensatory damages in an amount that exceeds $75,000.00; (iii) pre- and post-judgment interest, plus all costs and expenses of this action, and (iv) such other and further relief as this Court deems just and appropriate.

## COUNT II
### (Fraudulent Inducement – Damages)

36.    Mike and Ashgar adopt and incorporate herein by reference the allegations of paragraphs 1 through 35 above as if fully set forth herein.

37.    Sirnaomics made Representations to Mike and Ashgar including, among other things, that (i) Sirnaomics would exchange their shares in Sirnaomics, Inc. for shares in Sirnaomics Ltd.; and (ii) the replacement shares in Sirnaomics Ltd. would be substantially the same, and carry substantially the same rights, as their original shares in Sirnaomics, Inc.

38.    Based upon Sirnaomics' Representations, Mike and Ashgar gave their consent to the Restructuring and the IPO, and otherwise entered into the Share Exchange Agreement. But for the Representations, and but for Sirnaomics agreeing to consistent obligations in the Share Exchange Agreement, neither Mike nor Ashgar would have provided their consent to the Restructuring or the IPO, and otherwise would not have agreed to the Share Exchange Agreement. Thus, Mike and Ashgar relied on Sirnaomics' Representations.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

39.      Unbeknownst to Mike and Ashgar, however, at the time of execution of the Share

Exchange Agreement, Sirnaomics did not intend, and in fact never intended, to perform the

obligations that they undertook in the Share Exchange Agreement.  Indeed, Sirnaomics intended

to keep Mike's and Ashgar's shares in the company(ies), and force Mike and Ashgar to remain

shareholders, no matter the loss in value of the shares that Mike and/or Ashgar may suffer after

the IPO.  Upon information and belief, Sirnaomics' intent was and is driven by a desire to hold

Mike and Ashgar—who together own a large percentage of the company—hostage to their share

ownership and thereby create the appearance of continued real value in the company, so that

Sirnaomics may induce more potential investors to invest their capital in Sirnaomics.  Thus,

Sirnaomics' Representations were false.  Moreover, Sirnaomics never told either Mike or Ashgar

that their shares would not or could not be publicly traded after consummation of the IPO.

40.      Sirnaomics' material misrepresentations and omissions proximately have caused

substantial damages, harm, and losses to Mike and Ashgar.

WHEREFORE, each of Mike and Ashgar respectfully requests judgment in his favor and

against Sirnaomics, Inc. and Sirnaomics Ltd., jointly and severally, for (i) compensatory damages in

an amount that exceeds $75,000.00; (ii) pre- and post-judgment interest, plus all costs and expenses

of this action, and (iii) such other and further relief as this Court deems just and appropriate.

## COUNT III
### (In the Alternative)
### (Fraudulent Inducement – Rescission)

41.      Mike and Ashgar adopt and incorporate herein by reference the allegations of

paragraphs 1 through 28 above as if fully set forth herein.

42.      Sirnaomics made Representations to Mike and Ashgar including, among other

things, that (i) Sirnaomics would exchange their shares in Sirnaomics, Inc. for shares in

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

Sirnaomics Ltd.; and (ii) the replacement shares in Sirnaomics Ltd. would be substantially the same, and carry substantially the same rights, as their original shares in Sirnaomics, Inc.

43.     Based upon Sirnaomics' Representations, Mike and Ashgar gave their consent to the Restructuring and the IPO, and otherwise entered into the Share Exchange Agreement. But for the Representations, and but for Sirnaomics agreeing to consistent obligations in the Share Exchange Agreement, neither Mike nor Ashgar would have provided their consent to the Restructuring or the IPO, and otherwise would not have agreed to the Share Exchange Agreement. Thus, Mike and Ashgar relied on Sirnaomics' Representations.

44.     Unbeknownst to Mike and Ashgar, however, at the time of execution of the Share Exchange Agreement, Sirnaomics did not intend, and in fact never intended, to perform the obligations that they undertook in the Share Exchange Agreement. Indeed, Sirnaomics intended to keep Mike's and Ashgar's shares in the company(ies), and force Mike and Ashgar to remain shareholders, no matter the loss in value of the shares that Mike and/or Ashgar may suffer after the IPO. Upon information and belief, Sirnaomics' intent was and is driven by a desire to hold Mike and Ashgar—who together own a large percentage of the company—hostage to their share ownership and thereby create the appearance of continued real value in the company, so that Sirnaomics may induce more potential investors to invest their capital in Sirnaomics. Thus, Sirnaomics' Representations were false. Moreover, Sirnaomics never told either Mike or Ashgar that their shares would not or could not be publicly traded after consummation of the IPO.

45.     Sirnaomics' material misrepresentations and omissions require Mike and Ashgar to be restored to their original position prior to their consent to the Restructuring and the IPO, and prior to the formation of the Share Exchange Agreement.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

11

WHEREFORE, each of Mike and Ashgar respectfully requests judgment in his favor and against Sirnaomics, Inc. and Sirnaomics Ltd., jointly and severally, for (i) rescission of the Share Exchange Agreement and other documents relating to the Restructuring and/or the IPO; (ii) related restitutionary equitable damages in an amount that exceeds $75,000.00; (iii) pre- and post-judgment interest, plus all costs and expenses of this action, and (iv) such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:    /s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber (CPF #0012130186)
jschwaber@steinsperling.com
Direct: 301-838-3210
Fax: 301-354-8110

    /s/ Deanna L. Peters
Deanna L. Peters (CPF #8812160244)
dpeters@steinsperling.com
Direct:  301-383-3231
Fax: 301-354-8131

1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852

*Attorneys for Mike Ghias and Ashgar Ghias*

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE
700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

12